JOHN POMEROY *vs.* EPHRAIM and THOMAS MILLS.

One who owns a proprietor's right in a town may *recover in ejectment* against any
one who is in possession without a title.

And he can so recover, even if the land sued for is a part of a public highway, or
court-house common.

The defendant's having taken a lease from the town of the land in question, for a
building-spot, and erected a building thereon, does not vary the plaintiff's right to
recover : and                                           ▸

If this even made defendant a tenant in common with the plaintiff, it would operate
as an ouster, and no demand would be necessary before the commencement of
the action.

This was *ejectment* for a small piece of land in Burlington, be-
ing a part of the court-house square.  Plea, not guilty, and issue
to the jury.

At the trial in the county court, the plaintiff produced in evi-
dence the charter of the town of Burlington, and a deed from
Daniel Voorhees, one of the original proprietors, to himself, dated
June 22d, 1807.

The defendants then produced in evidence a lease from the
select men of Burlington to themselves, executed on the 9th day
of April, 1821, and proved that they entered and had possess-
ed the premises under said lease, paying rent as stipulated in the
lease.

The plaintiff then produced in evidence a vote of the proprie-
tors of Burlington, passed in the year 1798, setting out the court-
house square for public purposes, and offered to prove that the
whole town of Burlington, except the square aforesaid, had been
long since severed and divided among the proprietors.  This ev-
idence was objected to, and rejected by the court.  He also offer-
ed to prove that the rents paid by defendants were expended by
the town for purposes other than those authorized by statute in re-
ference to the public rights of land.  This evidence, being object-
ed to, was excluded by the court.  The plaintiff next gave in ev-
idence certain votes of the town of Burlington relative to the
leasing of the premises, passed March 27, 1821, together with
the warning of the town meeting which passed said votes, which
were made a part of the case reserved.

It was testified by witnesses, that the square was laid out and
opened about the year 1797, or before ; that the court-house,
jail, and jailer's house, stood upon it in 1797 ; that in 1802, the
court-house was rebuilt upon a different part of the square, and
the jail removed from the square ; that the jailer's house was then,

or before, converted into a tavern house as the private property of
a Mr. King, who had built the same at his own expense ; that Mr.
King, having conveyed to the town or county another piece of
ground in the village as a site for the county jail, received from
the town officers a lease upon nominal rent of the ground covered
by his house, and also of a piece of ground parcel of the
square aforesaid whereon to erect an addition to his house ; which
arrangement was confirmed by act of the legislature in A. D.
1808 ; that the town authorities had exercised some control as to
the location of the court-house in 1802, as also of the court-house
and jail which existed previously ; that the square had always
continued open and unoccupied by any buildings save the court-
house, the tavern house aforesaid, and the jail, previous to 1802,
until about the beginning of the year 1821, when the town com-
menced leasing out parcels thereof with reservations of rent to the
town, and had given two or three such leases, besides the one to
the defendants ; and that the pieces thus leased were all situated
on the east of the square, in a line with the court-house and tav-
ern house aforesaid.

On the evidence thus detailed, the parties submitted the cause
to the direction of the court, who ordered a verdict for the defen-
dants ; and the verdict being returned accordingly, and judge-
ment thereon rendered, the plaintiff excepted to the several decis-
ions aforesaid, as also to the direction thus given to the jury, and
the case was thereupon removed to this Court.

*Pomeroy and Allen, for the plaintiff, contended,* I. That the
parties were not tenants in commmon.

1. Because the lease to the defendants was void ; because it
did not appear on the face of it that the select men were acting
within the scope of their authority, but the contrary.—*(3 Halst.
Rep.* 90 ; 5 *Am. Dig.* 435.) Because they have not pursued
their authority, but have conveyed a different estate than the stat-
ute warranted.—*(R.* 2 *Jon.* 111 ; *Stead's Exrs.* vs. *Converse,* 4
*Cranch,* 403 ; *Yancey* vs. *Hopkins,* 1 *Munf.* 419 ; 5 *Term. Rep.*
567 ; 1 *Atk.* 558 ; *Willes,* 169 ; 1 *Term. Rep,* 705 ; 2 *East,*
376 ; 10 *do.* 158 ; 3 *Cowp.* 26.) Because the lease was not
executed by all the select men.—*(Franklin* vs. *Osgood,*14 *Johns.
Rep.* 527.) And because one tenant in common cannot convey
a distinct part of the estate to a stranger.—*(9 Mass.* 34 ; 12
*do.* 348.)

2. Because, the select men did in fact execute the lease by au-

CHITTENDEN
January,
1831.

Pomeroy
vs.
Mills et al.

CHITTENDEN
January,
1831.

Pomeroy
vs.
Mills et al.

thority of a vote of the town, independent of the act of the legis-lature.

3. Because, by the dedication of the public square, and the long continued use of it as such, the town had already parted with the *use* of the premises, which was all the right the act gave them : and the parties cannot be said to be tenants in common of that which neither have the right to occupy.—*Jackson* vs. *Davenport*, 18 *Johns.* 295 ; *Brayton*, 66 ; 10 *Johns. Rep.* 5.

4. Because, admitting the lease to have been good and valid to convey the pretended right of the select men under the statute, it is contended that by defendants' own showing the select men had been already quieted in more than their proportion of the public square.

II. Admitting the parties to have been tenants in common—was a demand necessary ? We contend not, because there was an *actual ouster*, as appears, 1. By the conveyance, which is for the *whole* estate.—*Adams on Eject. p.* 56 ; *Vin. Abridg.* 14, 512. 2. The entry of the defendants could not be consider-ed as made for co-tenants, it being against their will and intent, as expressed in the dedication, and to be inferred from the use.

III. We contend that the law is settled, that the plaintiff in the action of ejectment may declare for the whole, and recover ac-cording to his right.—1 *Chit. Rep.* 41 ; *Gist* vs. *Robinett*, 3 *Bibb*, 2.

IV. Where tenants in common have set apart or dedicated a piece of land for a specified purpose, and there is an entry and pos-session of the premises, contrary to the dedication, by one of the persons dedicating, he may be ousted in an action of ejectment in the name of a co-dedicator.—3 *Burrows*, 1290.

*Adams, for the defendants.*—Plaintiff and defendants both showing an interest in the town, the only questions, which can arise, are, 1. Has the *locus in quo* been dedicated to public use ? 2. If it has, what is the effect upon the respective rights of the parties ?

If it has not been dedicated, then these parties are tenants in common, and this suit cannot be sustained without showing an ac-tual ouster, or a demand to be let in ; and of this there is no pre-tence of any testimony.

In relation to the only two questions, which we suppose can arise in the case, we contend, 1. That the evidence does not show any dedication of the square, or rather of that part in ques-

tion, to the public.   2. That the town have never consented to <span>CHITTENDEN<br>*January,*<br>1831,</span>
any dedication of the east side of the square.   3. If the square
was dedicated, such dedication must operate equally upon the     Pomeroy
rights of the parties, and cannot give one any right over the other.   *vs.*<br>Mills et al.
4. No abuse of the rights derived from such dedication can ope-
rate as a forfeiture of the private rights of the parties.

HUTCHINSON, C. J., pronounced the opinion of the Court.—
This action was before this Court a year ago this present term,
and was heard upon a case very similar to the present, and a
new trial was granted to the plaintiff.   The question about tenan-
cy in common, of plaintiff and defendants, was not then urged.
No other material question is newly raised.   The decision of this
Court, granting the plaintiff a new trial, established his right to
recover the premises, as against the defendants, considering them
strangers to title under any proprietors.   That decision seems
not yet reported,* and I would not greatly anticipate the report,
but yet explain concisely the grounds of decision, as the same ques-
tion is now urged, with considerable confidence, by the defendants'
counsel.   It appears by the case and papers referred to,  that the
proprietors of the township of Burlington, on the twenty sixth day
of June, 1798, voted as follows, to wit, " That the block contain-
ing two and half acres of land, whereon the court-house and jail
are built in said Burlington, shall and hereby is set off for the use
of the public, for erecting all necessary county and town buildings,
for public use."   This vote implies, that the plot had before
acquired a known boundary, so that an allusion to it as the plot,
whereon the court-house and jail were then erected, was a suffi-
cient description in the vote.   The land now in dispute lay open
for public use till 1821, about twenty three years before the erec-
tion by the defendants.   It is highly proper and necessary, that
public buildings should be accommodated with a vacant common,
for the convenience of the public, that would use such public
buildings.   The quantity of land, appropriated in this case, shows,
that a public common, as well as a place for public buildings, was
intended.   Such a common is as a public highway, both as respects
the public and the original owners.   Every individual may travel
upon either at pleasure ; but he must exercise no right over either,
but such as every other citizen may exercise.   The erection of an
edifice upon such a highway, or common, for private use, destroys
the public use.   And he, who thus encroaches upon the rights of

* That case has since been reported.—See present volume ∩. 279.—*Ed.*

Chittenden
January,
1831.

Pomeroy
vs.
Mills et al.

the public, is liable to be indicted for the nuisance ; or the original owner of the soil may maintain trespass or ejectment, as the case may require, and recover his damage just as if there had been no dedication to the public ; for all the rights any individual may enjoy, consistent with the dedication to the public, belong exclusively to the original owners of the soil. If the plaintiff recovers in ejectment, he must hold only in a way consistent with the rights of the public. He may be liable to an indictment for continuing the nuisance, should he continue it. But no individual, as such, can call him to account for that, which is no injury to such individual, otherwise than in common with the rest of the community.

But it is urged against the plaintiff's right to recover, that, if he recovers, the defendants will be entitled to betterments, they having entered under a lease from the select men, executed according to the vote of the town. If this be so, still it forms no bar to a recovery. If the plaintiff has a right, he must recover ; and, if he chooses to pursue his right in an action at law, he must claim subject to the rights the law secures to the defendants. That is, if the defendants are entitled to betterments, the plaintiff must pay them, or risk a levy upon the premises. But how is the fact ? The defendants have taken a lease, permanent in the outset, but liable to be defeated by the town's paying for improvements made by the defendants. This is a lease of a small piece of land notoriously a part of the public common. It had long been used as such without interruption. If the defendants had taken a lease of a part of any man's farm and gone into possession under it, they might nearly as well talk about a supposed title as in the present case. But what are the betterments in this case ? A mere public nuisance, liable to be prostrated, by the proper mandate of the law, at any time. There can be no value; nothing to recover in the form of betterments.

But, as having some bearing upon this point, and more still upon the tenancy in common, it is said, the town have a right to possess certain public rights of land in town. I should think it doubtful whether the town could be tenants in common with other proprietors, in consequence of their control over any public rights. The law provides for their taking the use in a certain way ; but supposes the rights severed from the other lands, by the proprietors, and gives the towns no agency in this severance. They probably might proceed in chancery and compel a severance. Be this as it may, the right given to the

town is to lease out, in a certain way prescribed by law, the land thus put under control, and apply the rents to such definite purpose as the law allows.  Now, there is nothing about this lease that indicates to what right this land belongs, or that marks the legal destiny of the rent.   Indeed, the town assumes to be absolute owner of this land, without reference to any public right whatever ; and their lease does not amount to a supposed title. Moreover they assume an exclusive ownership.   Such a lease of the premises, if their be a co-tenant, is void as against such co-tenant.   He would be entitled to his partition, and to hold where his portion fell, just as if no lease were made, and such buildings were erected as mere acts of trespass.   If it were not so, this lease of the entirety, and holding under it in such an exclusive manner, as appears in the case, is itself an ouster, and the plaintiff was under no necessity to make a demand to be let in as tenant in common, before commencing his action.   The plaintiff has shown a good title as against a stranger to title, and the defendants have shown no title that can avail them.

Pomeroy
vs
Mills et al.

The judgement of the county court is<br/>reversed, and a new trial is granted.

*Pomeroy & Allen*, for plaintiff.

*C. Adams, Bailey & Marsh*, for defendants.